## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **SALOMON CAMPOS, JR.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **CITY OF HARLINGEN,** | § | |
| **TEXAS DEPARTMENT OF PUBLIC** | § | |
| **SAFETY,** | § | |
| **RAUL ROY GARZA,** | § | **CIVIL ACTION NO.** |
| In his official and personal capacity, | § | **2:25-cv-269** |
| **SCOTT VEGA,** | § | |
| In his official and personal capacity, | § | |
| **MANUEL TOVAR,** | § | |
| In his official and personal capacity, | § | |
| **LUIS SAENZ,** | § | |
| In his official and personal capacity, | § | |
| **NOE GARZA,** | § | |
| In his official and personal capacity, | § | |
| and | § | |
| **ADELA GARZA,** | § | |
| In her official and personal capacity, | § | |
| *Defendants* | § | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

## <u>COMPLAINT</u>

Plaintiff Salomon Campos, Jr. (herein referred to as "Mr. Campos"), by and through counsel CJ Grisham, brings this Complaint against Defendants City of Harlingen, Texas Department of Public Safety, Raul Roy Garza, Scott Vega, Manuel Tovar, Luis Saenz, Noe Garza, and Adela Garza.  Individual Defendants are sued in their personal capacities, and in support thereof allege the following upon information and belief:

## INTRODUCTION

Ludwig von Mises once said that "the main political problem is how to prevent the police power from becoming tyrannical. This is the meaning of all the struggles for liberty." *The Postman* Author and Dr. Glen David Brin agrees and adds that "It is said that power corrupts, but actually it's more true that power attracts the corruptible. The sane are usually attracted by other things than power." The 5th Circuit United States Court of Appeals has held that "[t]he mere fact that a citizen carries a firearm does not create reasonable suspicion that he committed a crime." *United States v. Wilson*, 143 F.4th 647 (5th Cir. 2025).

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, which provides federal question jurisdiction for civil actions arising under the Constitution and laws of the United States, and 28 USCS § 1343,

which provides jurisdiction for civil rights actions seeking to redress the deprivation of rights secured by the Constitution or federal law.

2.    This Court has personal jurisdiction over defendant City of Harlingen because it is a governmental entity in Texas.

3.    This Court has personal jurisdiction over defendant Texas Department of Public Safety because it is a governmental entity in Texas.

4.    This Court has personal jurisdiction over defendant Raul Roy Garza because he is a resident of Texas.

5.    This Court has personal jurisdiction over defendant Scott Vega because he is a resident of Texas.

6.    This Court has personal jurisdiction over defendant Manuel Tovar because he is a resident of Texas.

7.    This Court has personal jurisdiction over defendant Luis Saenz because he is a resident of Texas.

8.    This Court has personal jurisdiction over defendant Noe Garza because he is a resident of Texas.

9.    This Court has personal jurisdiction over defendant Adela Garza because she is a resident of Texas.

10.    This Court is the proper venue for this case pursuant to 28 USCS § 1391, as a substantial part of the events or omissions giving rise to the claims

occurred in this district, and all defendants are residents of Texas, the state in which this district is located.

## PLAINTIFF

11.    Plaintiff Salomon Campos, Jr. (Sonny) is a resident of Texas.

12.    Mr. Campos has a substantial interest in protecting his civil rights and not having them violated by government officials.

## DEFENDANTS

13.    Defendant City of Harlingen is a governmental entity in Texas.

14.    Defendant Texas Department of Public Safety is a governmental entity in Texas.

15.    Defendant Raul Roy Garza is a resident of Texas and a licensed peace officer with the Texas Department of Public Safety and a Texas Ranger being sued in his personal capacity.

16.    Defendant Scott Vega is a resident of Texas and an officer with Harlingen Police Department who is being sued in his personal capacity.

17.    Defendant Manuel Tovar is a resident of Texas and an officer with Harlingen Police Department who is being sued in his personal capacity.

18.    Defendant Adela Garza is a resident of Texas and a Cameron County Assistant District Attorney who maliciously prosecuted Mr. Campos who is being sued in her personal capacity.

19.     Defendant Luis Saenz is a resident of Texas and a Cameron County Assistant District Attorney who maliciously prosecuted Mr. Campos who is being sued in his official and personal capacity.

20.     Defendant Noe Garza is a resident of Texas and a Cameron County Assistant District Attorney who maliciously prosecuted Mr. Campos who is being sued in his personal capacity.

21.     Defendant Adela Garza is a resident of Texas and a Cameron County Assistant District Attorney who maliciously prosecuted Mr. Campos who is being sued in her personal capacity.

## STATEMENT OF FACTS

22.     Plaintiff Salomon Campos, Jr. (Sonny) was charged with capital murder in connection with the death of Ernest Gonzalez.

23.     On October 15, 2024, Mr. Campos was found not guilty of all charges after a jury trial.

24.     During the investigation and prosecution of Mr. Campos, Defendant Texas Rangers and police officers falsified reports and grand jury subpoenas.

25.     During the execution of a search warrant, authorities engaged in illegal search and seizure, destroyed Mr. Campos' property and evidence, and engaged in theft.

26.    Hard drive evidence was either intentionally or recklessly destroyed by officers from the Harlingen Police Department (HPD).

27.    Defendant Vega negligently failed to protect evidence in his custody that was potentially exculpatory to Mr. Campos.

28.    Bodycam videos from a search in June of 2020 were cropped and edited by DPS troopers.

29.    Defendant Raul Roy Garza repeatedly lied in his reports, affidavits, and under oath during court proceedings.

30.    Defendant Saenz refused to investigate Defendant Garza who lied during sworn court proceedings regarding the presence of a confidential informant and other matters during trial, demonstrating a pattern, practice, or procedure to cover up for officers who the DA's office is maliciously prosecuting.

31.    Mr. Campos' attorneys requested an investigation into perjury committed by the Rangers and HPD detectives, but the request Rincones denied this request twice.

32.    In response to plaintiff's complaint to the OIG/DPS against Texas Rangers for perjury, Raul Garza retired the following month, effectively ending the investigation.

33.    All HPD officers involved in destroying evidence on a hard drive were promoted, and none were ever reprimanded or terminated, demonstrating that

a policy, practice, or procedure exists to destroy evidence or improper training on the preservation of evidence and protection of Mr. Campos' property.

34.    On July 12, 2023, Raul Roy Garza, in violation of DPS training procedure, failed to use the DPS DNA Collection Kit to collect Mr. Campos' DNA saliva.

35.    Defendant Garza's affidavit falsely stated, "A DNA sample from Salomon Campos is sought to compare any trace DNA found on the items found with the remains of Ernest Gonzalez, thereby bolstering the evidence that he killed Ernesto Gonzalez."

36.    Prosecutors had Mr. Campos indicted for capital murder which includes the death penalty, causing tremendous emotional distress to Mr. Campos.

37.    D.A. Adela Garza recklessly and maliciously called Mr. Campos a "murderer and a killer" on a Zoom call, which was recorded and published to third parties.

38.    Prosecutors used evidence never shown or provided to the defense in violation of the Texas Rules of Criminal Procedure 39.14, such as a video from a phone that belonged to HPD officer Scott Vega.

39.    The City of Harlingen neglected to provide proper training to Defendant Vega and other officers in the protection, maintenance, and handling of evidence to prevent spoilage and loss during a capital murder case.

40.    Defendant Tovar knowingly and falsely stated on an affidavit of probable cause that he copied from Defendant Garza's report without any due diligence that Mr. Campos "states in his interview that he video recorded and photographed Ernesto (the Deceased) because "[Mr. Campos] though this was a good idea because Ernesto has not always been a saint," comments that Mr. Campos never made and no evidence proved at trial.

41.    Defendant Tovar's knowingly false statements were used to obtain defective search warrants.

42.    Officer Tovar claimed under oath that he never used a Confidential Informant (CI), but his notes that were admitted into evidence showed that he did use a CI twice.

43.    There were no supplemental reports written by Ranger Garza regarding the CI or a watch that was allegedly evidence.

44.    Due to not being allowed out of jail, Mr. Campos lost his home, and his wife lost her job because her husband was falsely accused of murder.

45.    Grand jury subpoenas were issued in violation of Art 20.10 by issuing subpoenas outside of both county and state.

46.    Mr. Campos cooperated with authorities by surrendering his phone voluntarily three times.

47.    Mr. Campos cooperated with both searches of his property with cadaver dogs that turned up no evidence of a cadaver.

48.    Defendant Adela Garza initially stated that cadaver dogs alerted because of dead chickens, but after being pushed in motions, the ADA admitted there were no dead chickens.

49.    Assistant District Attorney Dale Robertson was forthright in contradicting Defendant A. Garza's statements that there were dead chickens to bolster her unlawful warrants.

50.    Defendants knew that Mr. Campos' uncle had exculpatory evidence, but did not bring him to trial to protect their malicious case.

51.    The District Attorney stated that they didn't have anything on the phones because they didn't do anything to get the information, in violation of plaintiff's 6th Amendment rights.

52.    The District Attorney initially stated that a DVR crashed, but after going through three separate DAs, the third DA admitted it wasn't a crash but an override, yet there were no notes or any evidence of an override.

53.    Mr. Campos lost six years of income because he lost his license as a result of the false charges against him.

54.    Mr. Campos' lost annual income in 2019 was around $87,000.00 (EIGHTY-SEVEN THOUSAND DOLLARS).

55.    Mr. Campos lost his federal transport officer job and was unable to keep his license active pending the criminal charges.

56.    Mr. Campos served as a federal transport officer for 16 years and lost his pension for which he would have otherwise qualified for retirement at 20 years of service.

57.    Mr. Campos intended to retire after meeting all retirement eligibility requirements.

58.    Mrs. Campos was a middle school teacher with 27 years of service and an annual income of $67,000.00 per year.

59.    Mrs. Campos was forced to resign in September 2024 after her husband, Mr. Campos, was charged with murder.

60.    Mrs. Campos intended to retire after meeting all retirement eligibility requirements.

61.    Mr. Campos was deprived of liberty by incarcerated for eleven years and one week, lost his job and ability to provide for his family, and lost his home due to the expense of defending himself (being forced to live in a barn with horses) as a result of this malicious prosecution.

**FIRST CLAIM FOR RELIEF**
**Violation of Fourth Amendment Rights - Illegal Search and Seizure**
**(against defendants Texas Ranger Raul Roy Garza, City of Harlingen, Scott Vega, Tovar, and Texas Department of Public Safety)**

62.    Mr. Campos repeats and realleges the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

63.    Defendants acted under color of state law.

64.    During the execution of search warrants at Mr. Campos' property, defendants conducted illegal searches and seizures, destroyed property and evidence, and engaged in theft.

65.    Defendants intentionally or recklessly destroyed hard drive evidence that could have exonerated Mr. Campos.

66.    Defendants cropped and edited bodycam videos from a search in June 2020 to remove exculpatory evidence.

67.    Defendant Tovar made false statements in an affidavit of probable cause to obtain search warrants against Mr. Campos.

68.    Defendant Department of Public Safety failed to properly train and supervise individual defendants about how to establish probable cause for a warrant.

69.    These actions violated Mr. Campos' Fourth Amendment right to be free from unreasonable searches and seizures.

70.    As a direct and proximate result of defendants' actions, Mr. Campos suffered damages including loss of liberty, loss of his home, his wife's loss of employment, emotional distress, and property damage.

## SECOND CLAIM FOR RELIEF
### Violation of Sixth Amendment Rights - Right to a Fair Trial
### (against defendants Raul Roy Garza, City of Harlingen, Scott Vega, Tovar, Luis Saenz, Noe Garza, Adela Garza, and Texas Department of Public Safety)

71.     Mr. Campos repeats and realleges the allegations set forth in paragraphs 1 through 70 as if fully set forth herein.

72.     Defendants acted under color of state law.

73.     The District Attorney stated that they didn't have anything on the phones because they didn't do anything to get the information, in violation of plaintiff's 6th Amendment rights.

74.     Defendant Adela Garza called Mr. Campos a "murderer and a killer" on a recorded Zoom call.

75.     Defendants negligently and recklessly lost or caused to be lost exculpatory evidence before and during trial.

76.     These actions were intended to influence the court in violation of Mr. Campos' Sixth Amendment right to a fair trial with the misstatement of facts before the court.

77.     As a direct and proximate result of defendants' actions, Mr. Campos suffered damages including loss of liberty, loss of employment, loss of his home, his wife's loss of employment, emotional distress, and damage to his reputation.

## THIRD CLAIM FOR RELIEF
### Malicious Prosecution

**(against defendants Raul Roy Garza, City of Harlingen, Scott Vega, Tovar, Luis Saenz, Noe Garza, Adela Garza, and Texas Department of Public Safety)**

78.    Mr. Campos repeats and realleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79.    Defendants initiated and maintained a criminal prosecution against Mr. Campos for capital murder.

80.    The prosecution was terminated in Mr. Campos's favor when he was found not guilty on October 15, 2024.

81.    Defendants manufactured probable cause for the prosecution, as it was based on falsified reports, fabricated evidence, and perjured testimony.

82.    Defendants acted with malice and for a purpose other than bringing Mr. Campos to justice.

83.    Defendants Department of Public Safety and police officers falsified reports and grand jury subpoenas to support the prosecution.

84.    Defendant Raul Roy Garza lied in reports, affidavits, and under oath during court proceedings.

85.    Defendants Department of Public Safety and police officers falsified reports and grand jury subpoenas.

86.    Defendants from the Texas Department of Public Safety cropped and edited bodycam videos from a search in June 2020 to remove exculpatory evidence.

87.    This fabricated evidence was presented to the grand jury and at trial, making it likely to influence the jury's decision.

88.    Defendant Tovar made false statements in an affidavit of probable cause and claimed he never used a CI when his notes showed he did use a CI twice.

89.    Defendant Raul Roy Garza lied in reports and affidavits.

90.    Defendants Adela Garza called him a "murderer and killer" on a Zoom call, demonstrating malice.

91.    Defendant Tovar made false statements in an affidavit of probable cause and claimed he never used a CI when his notes showed he did use a CI twice.

92.    Defendants from the Harlingen Police Department negligently and recklessly cause hard drive evidence to be destroyed that could have exonerated Mr. Campos.

93.    The systematic nature of the evidence fabrication demonstrates a specific intent to deprive Mr. Campos of his constitutional rights.

94.    Defendants knew that Mr. Campos' uncle had exculpatory evidence, but did not bring him to trial to protect their malicious case.

95.    As a result of these fabrications, Mr. Campos was charged with capital murder and deprived of his liberty during the pretrial and trial periods.

96.     Mr. Campos was deprived of liberty by being incarcerated for eleven years and one week, losing his job and ability to provide for his family, and losing his home due to the expense of defending himself (Mr. Campos was forced to live in a barn with horses) as a result of this malicious prosecution.

97.     Defendant prosecutors violated Texas Disciplinary Rules of Professional Conduct 3.09.

98.     Defendant prosecutors violated Tex. Code of Crim. Procedure § 2.01 that makes it the "primary duty of an attorney representing the state, including a special prosecutor, …not to convict but to see that justice is done."[1]

99.     As a direct and proximate result of defendants' actions, Mr. Campos suffered damages including loss of liberty, loss of employment, loss of his home, his wife's loss of employment, emotional distress, and damage to his reputation.

### FOURTH CLAIM FOR RELIEF
### Conspiracy to Violate Civil Rights
### (against all defendants)

100.    Mr. Campos repeats and realleges the allegations set forth in paragraphs 1 through 99 as if fully set forth herein.

101.    Defendants conspired to deprive Mr. Campos of his constitutional rights.

---

[1] The law changed in 2023.  This statute is now memorialized as Tex. Code of Crim. Proc. § 2A.101.

102.    The coordinated nature of defendants' misconduct demonstrates an agreement to deprive Mr. Campos of his constitutional rights.

103.    Defendants Texas Rangers and HPD officers falsified reports and tampered with evidence as overt acts in furtherance of the conspiracy.

104.    Defendants threatened Mr. Campos with serious crimes and consequences, hid evidence from his defense team, and facilitated the fabrication or manipulation of evidence as overt acts in furtherance of the conspiracy.

105.    As a result of this conspiracy, Mr. Campos was deprived of his constitutional rights under the First, Fourth, and Sixth Amendments by maliciously prosecuting Mr. Campos.

106.    As a direct and proximate result of defendants' actions, Mr. Campos suffered damages including loss of liberty, loss of employment, loss of his home, his wife's loss of employment, emotional distress, and damage to his reputation.

### FIFTH CLAIM FOR RELIEF
### Failure to Intervene
### (against all defendants)

107.    Mr. Campos repeats and realleges the allegations set forth in paragraphs 1 through 106 as if fully set forth herein.

108.    Defendants observed or had reason to know that Mr. Campos' constitutional rights were being violated.

109.   Multiple law enforcement officers were present during searches where evidence was destroyed or tampered with.

110.   After a complaint to OIG/DPS against Texas Rangers for perjury, Defendant Raul Garza retired, effectively ending the investigation.

111.   Defendants had a realistic opportunity to intervene to prevent the harm from occurring.

112.   Defendants failed to take reasonable steps to intervene.

113.   As a direct and proximate result of defendants' failure to intervene, Mr. Campos suffered damages including loss of liberty, loss of employment, loss of his home, his wife's loss of employment, emotional distress, and damage to his reputation.

## SIXTH CLAIM FOR RELIEF
### Municipal Liability - Failure to Train and Supervise
### (against defendants City of Harlingen and Texas Department of Public Safety)

114.   Mr. Campos repeats and realleges the allegations set forth in paragraphs 1 through 113 as if fully set forth herein.

115.   Defendants City of Harlingen and Texas Department of Public Safety failed to adequately train and supervise their employees.

116.   Texas Rangers and Harlingen Police Department officers falsified reports, tampered with evidence, and committed perjury.

117.    After a complaint to OIG/DPS against Texas Rangers for perjury, Raul Garza retired, effectively ending the investigation.

118.    HPD officers involved in destroying evidence were promoted rather than disciplined, demonstrating a policy of condoning misconduct.

119.    These failures to train and supervise amounted to deliberate indifference to the rights of persons with whom the police come into contact.

120.    The inadequate training and supervision actually caused the employees' violation of plaintiff's rights.

121.    As a direct and proximate result of defendants' failure to train and supervise, Mr. Campos suffered damages including loss of liberty, loss of employment, loss of his home, his wife's loss of employment, emotional distress, and damage to his reputation.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in his favor and against defendants, and grant the following relief:

122.    Compensatory damages against all defendants in the amount of $2,114,100 for Mr. Campos' loss of home.

123.    Loss of consortium due to wife's loss of employment in the amount of $1,305,000.00

124.    Compensation for emotional distress, damage to reputation, and property damage during searches in an amount to be determined by a jury.

125.    Punitive damages against all individual defendants in the amount of $10 million or an amount to be determined at trial.

126.    Declaratory relief pursuant to 28 USCS § 2201, declaring that defendants violated Mr. Campos' constitutional rights under the First, Fourth, and Sixth Amendments.

127.    Attorney's fees and costs pursuant to 42 USCS § 1988.

128.    Injunctive relief requiring defendants City of Harlingen and Texas Department of Public Safety to implement proper training and supervision procedures to prevent similar constitutional violations in the future.

129.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

LAW OFFICES OF CJ GRISHAM, PLLC

CJ Grisham
Texas State Bar no. 24124533

cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P:  254-405-1726